UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-00052-TBR

ASSOCIATED WAREHOUSING, INC.                                                      PLAINTIFF

v.

BANTERRA CORP. d/b/a BANTERRA BANK                                      DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion to Dismiss (Docket #19). Plaintiff has filed a response (Docket #25) and Defendant has filed a reply (Docket #26). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

**BACKGROUND**

In early 2002, Plaintiff, Associated Warehousing, Inc. ("AWI"), sought financing for a construction project for its facility. AWI contacted Defendant, Banterra Corporation d/b/a/ Banterra Bank ("Banterra"), regarding its financial services. AWI, primarily through its representative Ralph C. "Chip" Pickard, Jr., discussed with Banterra, through its Vice President, Kevin Peck, a financing package consisting of three components: a Non-Revolving Construction Loan, Real Estate Term Loan, and Letter of Credit to support an eventual Bond Issue for the permanent financing of the two aforementioned loans.

On July 1, 2002, Peck sent to Pickard a Term Letter that stated the terms of the Non-Revolving Construction Loan, Real Estate Term Loan, and Letter of Credit. The relevant terms of the Non-Revolving Construction Loan and Real Estate Loan included the purpose, amount, repayment, maturity, and rate of the loans. Fees were to be paid pursuant to "issuance of Letter

of Credit." The terms of the Letter of Credit stated the purpose, amount, repayment, and fee of the loan. Notably, the rate was "to be determined if Letter is drawn." Personal assets, including real estate mortgages, were listed as collateral for all three loans. The Term Letter was not signed by either party and clearly stated the following:

> This preliminary proposed terms letter has been prepared to facilitate our discussions of the possible terms of credit. It does not cover all terms and conditions under which we contemplate any credit would be extended and is merely intended to provide the basis for further discussions.

On July 8, 2002, Banterra closed the Non-Revolving Construction Loan and the Real Estate Term Loan through the execution of promissory notes with accompanying commercial guaranties and security agreements. These documents were signed by both parties through their respective representatives. Upon receipt of the loan funds, AWI constructed an additional warehouse and paid off an existing loan on its facilities owed to another bank. Pickard then continued to coordinate with Peck regarding the Letter of Credit and Bond Issue. At some point it was discovered that in order to issue the Letter of Credit, Banterra first must be a rated bank, which is was not.

Banterra claims that it then reached out to First Tennessee Bank , a rated bank, to obtain a wrap-around letter of credit. However, because Banterra was unwilling to accept First Tennessee Bank's request that Banterra guarantee the wrap-around letter of credit, the negotiations failed. During this same time, AWI claims Pickard proceeded to secure bond placement with AmSouth Bank, a rated bank, and that Peck, on behalf of Banterra, took part in those negotiations. AWI hired bond counsel. Negotiations between AmSouth, bond counsel, and Banterra continued until March 19, 2003. In early March 2003, Peck resigned from Banterra. On March 19, 2003, Banterra informed AWI that it would issue a Letter of Credit without endorsing the wrap-around letter of credit by an additional bank. AWI declined to

accept the Letter of Credit without the wrap-around letter, claiming that to do so would be outside the Term Letter.

In its complaint, AWI claims that the Term Letter of July 1, 2002 is a binding contract between AWI and Banterra. Count I alleges that Banterra breached the Term Letter contract when it failed to provide the Letter of Credit to secure the Bond Issue. Count II alleges that Banterra breached the covenant of good faith and fair dealing when it refused to honor its commitment to provide the Letter of Credit. Count III alleges misrepresentation by omission on the part of Banterra for its failure to disclose that it was a non-rated bank and therefore could not issue the Letter of Credit. Finally, Count IV alleges promissory estoppel based on AWI's detrimental reliance upon the Term Letter in executing the Non-Revolving Construction Loan and Real Estate Term Loan with Banterra.

## STANDARD

Banterra moves the Court to dismiss this case under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either

direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

### I. Breach of Contract

To establish a breach of contract claim under Kentucky law, the plaintiff must show by clear and convincing evidence that an agreement existed between the parties. *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 790 (W.D. Ky. 2001). "An enforceable contract must contain definite and certain terms setting form promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (citing *Fisher v. Long*, 172 S.W.2d 545 (Ky. App. 1943)). While every possible term need not be defined, the agreement must set forth the "essential terms" of the deal. *Auto Channel*, 144 F.Supp.2d at 790. "Mutuality of obligations is [also] an essential element of a contract, and if one party is not bound, neither is bound." *Kovacs*, 957 S.W.2d at 254 (citing *Morgan v. Morgan*, 218 S.W.2d 410 (Ky. App.1949)).

AWI has pled facts sufficient to allege the existence of a contract between itself and Banterra. The Term Letter (Exhibit # A) includes definite and certain terms regarding the purpose, amount, repayment, maturity, rate, fees, and collateral for both the Non-Revolving Construction Loan and Real Estate Term Loan, all of which are essential terms in a deal of this kind. The Term Letter also specifies the amount, repayment, maturity, fee, and collateral of the Letter of Credit.

Plaintiffs have also pled facts sufficient to allege consideration. AWI entered into the Non-Revolving Construction Loan and Real Estate Term Loan with Banterra, thereby providing

Banterra with commercial security and guarantees of personal assets in exchange for funding, pursuant to the terms stated in the Term Letter. Furthermore, AWI alleges that because the Letter of Credit failed to be executed, Banterra gained the value of alternative permanent financing from AWI based on an increased interest rate.

It is true that the Term Letter expressly "outlines certain preliminary financing terms for purposes of further discussion" and does not purport to be a finalized agreement. Thus, it is disputable whether the Term Letter is indeed an enforceable contract. Under Kentucky law, "it is well established that construction and interpretation of a written instrument are questions of law for the court." *Cinelli v. Ward*, 997 S.W.2d 474, 475 (Ky. App. 1999). Accordingly, this issue may be properly resolved upon a motion for summary judgment. However, when the facts are construed in a light most favorable to the plaintiff, as must be done so here, plaintiff has pled facts sufficient to overcome a motion to dismiss as to Count I of complaint.

## II. Breach of Implied Covenant of Good Faith & Fair Dealing

The implied covenant of good faith and fair dealing arises from the existence of an enforceable contract. *Auto Channel*, 144 F. Supp.2d at 791. The covenant imposes on all parties a duty to do everything necessary to carry out the contract. *See Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Because a disputable issue exists as to whether or not the Term Letter constitutes a valid contract, plaintiff's claim of breach of the implied covenant of good faith and fair dealing likewise cannot be dismissed.

## III. Misrepresentation

Misrepresentation by omission refers to fraud based on the failure of a party to disclose a material fact. *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003). To establish a claim for misrepresentation by omission, the plaintiff must allege facts

sufficient to show that the defendant: (1) had a duty to disclose a material fact; (2) failed to disclose that fact; (3) which induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a result. *Id.* (citing *Smith v. General Motors Corp.*, 979 S.W.2d 127 (Ky. App. 1998)). "A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Id.* (citing *Dennis v. Thomson*, 43 S.W.2d 18 (Ky. 1931)).

A relationship that gives rise to a fiduciary duty is one "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Services Ctr., Inc.*, 807 S.W.2d 476, 486 (Ky. 1991). Generally, bankers do not have fiduciary relationships with their debtors. As explained by the Supreme Court of Kentucky in *Steelvest*:

> Courts traditionally view a relationship between a bank and a depositor to be one of debtor-creditor and do not ordinarily impose a fiduciary duty of disclosure upon the bank. However, services to borrowers and pledgors may support a finding that a bank, in taking a borrower's note and collateral, falls under a fiduciary duty to disclose material facts affecting the loan transaction. In view of changes in the nature of commercial transactions bankers may sometimes be placed in a position of trust with respect to their customer. *Henkin, Inc. v. Berea Bank and Trust Co.*, 566 S.W.2d 420 (Ky. App. 1978).

*Id.* "Kentucky courts have twice imposed a fiduciary duty in the relationship between a bank and a borrower. On both occasions, the bank profited at the borrower's expense from confidential information received from the borrower." *Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893 (6th Cir. 2002).

Defendant's motion focuses on the fact that in its complaint AWI did not assert that Banterra had fiduciary relationship with AWI, nor did AWI allege facts that could establish such

a relationship. Furthermore, while the complaint does assert that Banterra profited at the borrower's expense in the form of increased costs incurred by AWI, this was not due to confidential information received by Banterra. Rather, it was due to Banterra's failure to procure a wrap-around letter of credit.

In the alternative, however, AWI notes in its reply that a duty to disclose is also created under Kentucky law "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Rivermont Inn*, 113 S.W.3d at 641. AWI properly asserts in its complaint that it was reasonable to expect that Banterra knew or should know whether or not it was a rated bank and could issue the Letter of Credit. Thus, Banterra failed to make a full disclosure of its status as a non-rated bank, a status that was material to completion of the Letter of Credit, and its failure to do so allegedly injured AWI. This is true regardless of whether the Term Letter is deemed a contract or preliminary agreement since misrepresentation by omission does not require a showing of a contractual relationship between the parties. Thus, AWI has pled facts sufficient to overcome a motion to dismiss as to Count III.

**IV.** **Promissory Estoppel**

Promissory estoppel exists where "a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." *Rivermont*, 113 S.W.3d at 642. Under Kentucky law, to state a claim for promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 549 (6th Cir. 2006) (citing *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F.Supp.2d 998, 1003 (W.D. Ky. 2004)).

Although terse in its wording, AWI has properly pled facts sufficient to make out a claim for promissory estoppel.  In its complaint, AWI alleges that the Term Letter was a binding promise to establish a Letter of Credit and that Banterra knew or should have known that it must have a rated bank status in order to issue such a letter.  Banterra had no such rated status.  AWI entered into the Non-Revolving Construction Loan and Real Estate Term Loan with Banterra in reliance on the terms of the Term Letter and the expectation of also receiving the Letter of Credit, all of which Banterra was aware.  Finally, AWI alleges that it suffered damages as a result of its reliance on the Term Letter.

The Court again notes that more evidence on the part of AWI would be necessary to overcome a motion for summary judgment in this instance.  However, when the facts are construed in a light most favorable to the plaintiff, AWI has pled facts sufficient to overcome a motion to dismiss as to Count IV.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is DENIED.

An appropriate order shall issue.