# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO.: 5:08-CV-00052-TBR

**ASSOCIATED WAREHOUSING, INC.**                                           **PLAINTIFF**

v.

**BANTERRA CORP. d/b/a BANTERRA BANK**                                     **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 86). Plaintiff has filed a response (DN 94). Defendant has filed a reply (DN 97). Plaintiff has filed a surreply (DN 109). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

In 2002, Plaintiff Associated Warehousing, Inc. ("AWI") contacted Defendant Banterra Corporation d/b/a/ Banterra Bank ("Banterra") concerning financing for a construction project for its facility. AWI discussed with Banterra a financing package consisting of three components: a real estate term loan, a non-revolving construction loan, and a letter of credit. The letter of credit was to support a bond issue which was to be performed by AmSouth Bank.

In April 2002, both construction loans were approved. However, in late May or early June, problems developed. According to Ralph Pickard, AWI's financial advisor, AmSouth informed AWI that it would only accept the letter of credit required to support the bond issue from a rated bank. Banterra is not a rated bank. Pickard began to reach out to rated banks in an effort to obtain a wrap around letter of credit that would support Banterra's letter of credit. Pickard negotiated with US Bank in June of 2002.

On July 1, 2002, Banterra, through its agent Kevin Peck, sent to AWI a terms letter ("Terms

Letter") stating the terms of the financing package. The letter states in its opening lines that it was an attempt to "outline certain preliminary financing terms for purposes of further discussion."

On July 8, 2002, Banterra closed on the two construction loans.

Pickard reached out to First Tennessee Bank, a rated bank, to obtain a wrap around letter of credit. However, Banterra was unwilling to accept First Tennessee Bank's request that Banterra guarantee the wrap around letter of credit and the negotiations failed. On March 19, 2003, Pickard met with Jeff May from Banterra to discuss the status of the transaction. Ultimately, Banterra did not issue the letter of credit.

AWI's Second Amended Complaint alleges claims of breach of contract, breach of the covenant of good faith and fair dealing, deceit, negligent misrepresentation, and promissory estoppel. Defendant now moves for summary judgment as to each claim.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of

evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### I. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

AWI alleges in its Second Amended Complaint that Banterra by its conduct treated the Terms Letter as a contract and ratified it as such. AWI alleges "[f]rom that time forward, the parties operated under the terms and conditions of the Terms Letter in preparation for the issuance of the Letter of Credit to support the Bond Issue for permanent financing." Second Am. Compl. ¶ 4. Based on these alleged facts, AWI asserts that Banterra breached the contract by failing to issue the Letter of Credit. AWI also alleges, based on the breach of contract, that Banterra breached the covenant of good faith and fair dealing. Banterra moves for summary judgment arguing that the Terms Letter is not a binding contract from which a breach of contract might arise. Banterra also

asserts that without a breach of contract action, an action for breach of the covenant of good faith and fair dealing cannot lie.

To establish a breach of contract claim under Kentucky law, the plaintiff must show by clear and convincing evidence that an agreement existed between the parties. *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 790 (W.D. Ky. 2001). "An enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (citing *Fisher v. Long*, 172 S.W.2d 545 (Ky. App. 1943)). While every possible term need not be defined, the agreement must set forth the "essential terms" of the deal. *Auto Channel*, 144 F.Supp.2d at 790. "Mutuality of obligations is [also] an essential element of a contract, and if one party is not bound, neither is bound." *Kovacs*, 957 S.W.2d at 254 (citing *Morgan v. Morgan*, 218 S.W.2d 410 (Ky. App.1949)). In Kentucky, "[i]t is well established that construction and interpretation of a written instrument are questions of law for the court." *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. Ct. App. 1998).

Kentucky follows the traditional "all or nothing" approach to preliminary agreements, i.e., "[e]ither the agreement is enforceable as a binding contract to consummate the transaction or it is unenforceable as something less." *Cinelli*, 997 S.W.2d at 478. "To be enforceable and valid, a contract to enter into a future covenant must specify all material and essential terms and leave nothing to be agreed upon as a result of future negotiations." *Walker v. Keith*, 382 S.W.2d 198, 201 (Ky. 1964). Therefore, "the parties must either agree upon the material terms or supply a 'definite method of ascertaining'" them. *Cinelli*, 997 S.W.2d at 477 (citing *Walker*, 382 S.W.2d at 202). Material terms are those terms essential to the enforcement of a contract. *See Warren v. Cary-Glendon Coal Co.*, 230 S.W.2d 638, 640 (Ky. 1950) ("[I]t is essential that the contract itself

4

be specific and the certainty required must extend to all particulars essential to the enforcement of the contract, such as the subject matter and purpose of the contract, the parties, the consideration, the time and place of performance, terms of payment and duration of the contract.").

*Cinelli* is the leading and authoritative Kentucky case on the issue of preliminary agreements between sophisticated business entities. *Giverny Gardens, Ltd. P'ship v. Columbia Hous. Partners Ltd. P'ship*, 147 Fed. App'x 443, 446 (6th Cir. 2005). In *Cinelli*,

> a telecommunications company entered into a preliminary agreement with a buyer, who agreed to lend the company $2.65 million in exchange for 54% of the stock. The agreement left open various terms, such as the completion of due diligence and obtaining necessary authorizations for the transfer. However, the agreement explicitly stated that "The parties acknowledge and agree that this Agreement is a valid and binding agreement, enforceable against each of them in accordance with its terms."

*Id.* (citing *Cinelli*, 997 S.W.2d at 476, 481-2) (internal citations omitted). The *Cinelli* Court noted that the agreement contemplated the future sale of the company and held that "where an agreement leaves the resolution of material terms to future negotiations, the agreement is generally unenforceable for indefiniteness unless a standard is supplied from which the court can supplant the open terms should negations fail." *Cinelli*, 997 S.W.2d at 477.

The *Cinelli* Court also looked at the intent of the parties based on the agreement and concluded the parties did not intend the agreement to constitute a binding contract. *Id.* at 478. The plaintiff argued the agreement was intended to be an enforceable contract, however, the court rejected this argument on the basis that throughout negotiations the parties modified or attempted to modify the agreement's terms and the agreement itself contemplated the possibility that the deal might never close. *Id.* The court concluded "the parties merely intended the Agreement to reflect the current status of their negotiations and to bind each to negotiate with 'best efforts' for a specified

5

period." *Id.*

In another Kentucky Court of Appeals case, *Gray v. First State Financial, Inc.*, the court held the alleged agreement was too indefinite to be enforceable when the alleged agreement lacked a closing date and was never approved by the necessary committee. No. 2008-CA-001034-MR, 2009 WL 2971673, *2 (Ky. Ct. App. Sept. 18, 2009). In *Gray,* the plaintiff testified that she believed, following a November 2002 meeting that she would be entering into an installment loan agreement with the defendant bank. *Id.* at *3. The document allegedly creating an enforceable contract was a March 2003 loan request by a loan officer to the loan committee. *Id.* The court explained that even though the document

> listed the loan's amount, interest rate and duration, the loan [request] was an internal bank document which provided no evidence that the terms had been conveyed to [the plaintiff]. The request not only lacked a closing date . . ., but the requested loan in fact was never approved by the necessary committee. Thus, any alleged agreement to make a loan was too indefinite to be enforceable.

*Id.*

The Court finds the Terms Letter is not a binding contract. The Terms Letter states in the second sentence the purpose of the letter is to "outline certain preliminary financing terms for purposes of further discussion." On page 3 of the Terms Letter, the terms of the Letter of Credit are set out. The document states "Amount: $1,625,000 (actual amount to be determined)" and "Rate: To be determined if Letter is drawn."[1] These are material terms. The plain language of these statements contemplates further negotiations of material terms. The court in *Cinelli* specifically held such further negotiations of material terms makes the agreement unenforceable as a contract.

---

[1] Also absent is to whom the letter of credit would be endorsed and how the letter of credit could be drawn upon.

Furthermore, the record reflects that throughout negotiations there were modifications of the fee associated with the letter of credit. Modification of a material term is further evidence that the parties did not intend for the Terms Letter to be a binding contract. As in *Cinelli*, the Terms Letter was intended to reflect the current status of the parties' negotiations, not to create an enforceable contract.

Additionally, similarly to *Gray*, there is language in the Terms Letter stating that "internal credit approvals" needed to be obtained "as a condition to proceeding with the transaction" and "given the preliminary nature of [the parties'] discussion, such approval process had not been initiated." Without such approval, any alleged agreement to make a loan or issue a letter of credit is too indefinite to be enforceable.

AWI argues that the Terms Letter's silence or ambiguity regarding certain essential terms means only that the Court must look to extrinsic evidence in an effort to determine the intent of the parties, not the absence of a contract. The Court is unpersuaded by this argument. The cases cited by AWI do not involve preliminary agreements between parties, nor do they involve disputes over the existence of a contract. Rather, these cases concern documents that were intended by the parties to them to be binding and enforceable contracts and which documents are silent or ambiguous as to at least one term. AWI is correct that had the parties intended the Terms Letter to be an enforceable contract, then any ambiguities may have been resolved by turning to extrinsic evidence. Here, however, it is evident from the language of the Terms Letter that it was not intended as a binding contract. The Court need not look to extrinsic evidence to determine the intent of the parties as it is evident from the document itself.

Based on both the fact that the terms were too indefinite under Kentucky law to be

enforceable and the intent of the parties as drawn from the language of the Terms Letter, the Court finds there was no valid and enforceable contract based on the Terms Letter. As there is no binding contract there can be no action for breach of contract. A breach of contract claim is required to sustain a claim for breach of the covenant of good faith and fair dealing. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp.2d 784, 791 (W.D. Ky. 2001). Summary judgment is granted.

**II. Fraud by Omission, Negligent Misrepresentation, and Promissory Estoppel**

AWI's last three counts in its Second Amended Complaint allege fraud by omission, negligent misrepresentation, and promissory estoppel. These claims, although requiring proof of distinct elements, each require AWI establish that it reasonably relied upon the Terms Letter. *See e.g., Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky. 1960) (fraud by omission); *H&R Mechanical Contractors, Inc. V. Codell Construction Co.*, Civ Act. No. 02-CI-24, 2005 WL 3487870, *3 (Ky. Ct. App. Dec. 22, 2005) (negligent misrepresentation); *Rivermont Inn, Inc. v. Bass Hotels Restorts, Inc.*, 113 S.W.3d 636 (Ky. Ct. App. 2003) (promissory estoppel).

As to each of these claims, Banterra asserts that AWI knew prior to the Terms Letter that Banterra was a non-rated bank which could not issue a letter of credit. Because AWI knew this, Bantera argues any reliance on omission of that information, or negligent misrepresentation that Banterra could issue the Letter of Credit, or promise to issue a letter of credit was unreasonable.

AWI attempts to present a genuine factual dispute regarding which representation by Banterra was relied upon. AWI argues that it did not rely upon the misrepresentation or omission regarding whether Banterra was a rated or non-rated bank, but instead relied upon Banterra's representation or promise that it could and/or would issue the letter of credit.

8

However, "[w]here the plaintiff does not believe the statements or where he has knowledge to the contrary, recovery is denied." *Wilson v. Henry*, 340 S.W.2d at 451. The Court finds, regardless of the representation relied upon, AWI could not have reasonably relied upon any representation alleged because of its prior knowledge. The record reflects AmSouth informed AWI it would not market the bond issue unless a rated bank issued the letter of credit. Pickard Dep. 40. It is undisputed that Banterra was a non-rated bank. Pickard, financial advisor for AWI, testified that AWI had to "shop around or find a suitable institution that was rated that could essentially provide a wrap around, if you will, letter of credit or a credit enhancement to Banterra's nonrated status." Pickard Dep. 40. Pickard first contacted US Bank in an effort to secure a wrap around letter of credit. Pickard Dep. 40-41. A fax from Pickard to a representative of US Bank was sent on June 13, 2002 regarding this issue. The Terms Letter in which AWI alleges Banterra misrepresented its ability to issue the letter of credit is dated July 1, 2002. Therefore, the record clearly reflects that AWI knew prior to the Terms Letter that Banterra was a non-rated bank and that it would not be able to issue a sufficient letter of credit without an additional wrap around letter from another institution. With this knowledge AWI could not have reasonably relied upon any alleged representation or promise by Banterra that it would issue a letter of credit.

Regardless of whether Banterra failed to disclose it was a non-rated bank or whether Banterra represented it could issue a letter of credit when it could not, the record is clear that AWI knew that Banterra was non-rated and that it could not issue a letter of credit. AWI cannot now argue they relied on the omissions or misstatements of Banterra when they had full knowledge prior to the misstatements.

AWI also relies on the testimony of its expert, Timothy Finn. AWI argues that Finn's

9

testimony supports AWI's position that it reasonably relied on Banterra to issue the letter of credit. AWI cites Finn's deposition wherein he testified that in his opinion Banterra was obligated to complete the transaction, including issuing the letter of credit. Finn Dep. 34-35, 38-39; Finn Report 1, II. B. This is not evidence on which a trier of fact could find for AWI, especially since the Court has held there was no contractual obligation to issue the letter of credit based on the Terms Letter. Furthermore, Finn does not testify that AWI's reliance on the Terms Letter was reasonable. AWI has failed to present a genuine dispute between the parties on an issue of material fact. Summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED. All claims against Defendant are dismissed. An appropriate order shall issue.