# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO.: 5:08-CV-00052-TBR

**ASSOCIATED WAREHOUSING, INC.**                                                    **PLAINTIFF**

**v.**

**BANTERRA CORP. d/b/a BANTERRA BANK**                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Alter Judgment (DN 125). Defendant has filed a response (DN 127). Plaintiff has filed a reply (DN 128). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

In 2002, Plaintiff Associated Warehousing, Inc. ("AWI") contacted Defendant Banterra Corporation d/b/a/ Banterra Bank ("Banterra") concerning financing for a construction project for its facility. AWI discussed with Banterra a financing package consisting of three components: a real estate term loan, a non-revolving construction loan, and a letter of credit. The letter of credit was to support a bond issue which was to be performed by AmSouth Bank.

In April 2002, both construction loans were approved. However, in late May or early June, problems developed. According to Ralph Pickard, AWI's financial advisor, AmSouth informed AWI that it would only accept the letter of credit required to support the bond issue from a rated bank. Banterra is not a rated bank. Pickard began to reach out to rated banks in an effort to obtain a wrap around letter of credit that would support Banterra's letter of credit. Pickard negotiated with US Bank in June of 2002.

On July 1, 2002, Banterra, through its agent Kevin Peck, sent to AWI a terms letter ("Terms Letter") stating the terms of the financing package. The letter states in its opening lines that it was

an attempt to "outline certain preliminary financing terms for purposes of further discussion."

On July 8, 2002, Banterra closed on the two construction loans.

Pickard reached out to First Tennessee Bank, a rated bank, to obtain a wrap around letter of credit. However, Banterra was unwilling to accept First Tennessee Bank's request that Banterra guarantee the wrap around letter of credit and the negotiations failed. On March 19, 2003, Pickard met with Jeff May from Banterra to discuss the status of the transaction. Ultimately, Banterra did not issue the letter of credit.

AWI's Second Amended Complaint alleges claims of breach of contract, breach of the covenant of good faith and fair dealing, deceit, negligent misrepresentation, and promissory estoppel. Defendant was granted summary judgment for each claim on July 9, 2010 (DN 124). AWI asks this Court to alter that judgment by focusing on the facts in a different way.

## STANDARD

A court may grant a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice." *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Id.* A Rule 59(e) motion does not provide plaintiffs another opportunity to argue the merits of their case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e).

**DISCUSSION**

**I. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff asks this court to revisit the issue of contract formation. However, Plaintiff has presented no new arguments, facts, or case law. As discussed in this Court's Summary Judgment opinion, a valid contract was never formed. Plaintiff again looks to the meeting minutes where the Board approved going forward with the bond issue as evidence of contract formation. However, the Board was also informed that they should be ready to approve conventional financing if the bond issue encountered problems. This does not indicate a contract.

Plaintiff's second argument for contract formation looks to the Terms Letter of July 2002, sent from Banterra to AWI. As above, this argument is almost identical to those presented in the response to Summary Judgment. As discussed previously, the Terms Letter, on its face, refutes the notion of a valid and enforceable contract. This, along with the other reasons discussed in the Summary Judgment opinion, preclude a finding that there was an enforceable contract.

Since Plaintiff has presented nothing to establish an error of law in terms of contract formation, this Court rests on its previous opinion regarding the issue.

**II. Fraud by Omission, Negligent Misrepresentation, and Promissory Estoppel**

AWI also asks this Court to reconsider the claims that would substitute for contract formation. AWI suggests that this Court improperly focused on the Terms Letter itself creating reliance in the Summary Judgment opinion. AWI suggests that the proper inquiry should instead have been on Banterra inducing reasonable reliance by leading AWI to believe that a wrap-around letter of credit to overcome Banterra's unrated status was all but assured.

This Court did, however, address both whether AWI could reasonably rely on (1) the Terms

3

Letter or (2) the assurance of a letter of credit after the Terms Letter. As discussed more thoroughly in the original opinion, AWI was clearly aware of Banterra's non-rated status by the time the Terms Letter was sent and throughout any negotiations thereafter. Accordingly, there can be no reasonable reliance on the Terms Letter that Banterra sent to AWI which failed to disclose Banterra's non-rated status. AWI was also aware that the letter of credit would require, at a minimum, a wrap around letter of credit from a rated bank. Accordingly, it would not have been reasonable for AWI to rely on any assurance that, no matter what, Banterra would issue the letter of credit, as Banterra plainly did not have the ability to make such an assurance. The evidence, however, does not show that Banterra ever made an assertion of such strength. Rather, AWI only contends that Banterra implied that its non-rated status was not an "insurmountable problem" but only a "hurdle or challenge." These are not the kinds of statements that induce reasonable reliance that a deal is guaranteed. Rather, these statements only show that both parties hoped to overcome the challenges presented by the non-rated status and move forward with the letter of credit. The only fact that might demonstrate reasonable reliance by AWI on the bond issue going forward was all parties engaging bond counsel to represent them for the potential bond issue. However, that alone is not enough to show reasonable reliance that a deal would inevitably happen; rather, as above, it just shows that a deal was close to happening. Accordingly, this Court stands by its original opinion and the Motion to Alter Judgment is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED.